UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                      No. SA-21-CR-115-JKP

SAMUEL SUESS TREVINO,

    *Defendant*.

## O R D E R

Before the Court is Defendant Samuel Suess Trevino's Motion to Suppress Evidence. *ECF No.* 28. For the reasons set forth below, the Court DENIES the Motion.

## BACKGROUND

On February 12, 2021, Detective Gene Valdez received information from a known informant regarding the defendant Samuel Trevino. Detective Valdez relayed this information to Detective Jason Reno, who is a member of the Repeat Offender Program (ROP) unit. Having previously worked a case involving Mr. Trevino, Detective Reno was aware of Mr. Trevino's two active felony warrants. Detective Reno learned that Mr. Trevino would be traveling back to San Antonio from Houston on February 12, 2021 via highway I-10 in a 2014 Saturn SUV. The informant indicated the defendant would be in possession of narcotics.

After receiving the tip, Detective Reno began an investigation to corroborate the information. Detective Reno located a license plate number that was associated with the vehicle, which verified the information from the informant. Using that information, Detective Reno was able to

locate the vehicle en route to San Antonio via I-10 in Bexar County. Based on this information, Detective Reno dispatched members of the ROP unit to follow the vehicle and conduct surveillance. While following the vehicle, Detective Reno and other members of the unit observed Mr. Trevino commit a traffic violation by failing to signal a lane change. There is no video footage of the traffic violation. A traffic stop was made by Officers Juan Silva and Matthew Raster in a marked patrol car. During the traffic stop Officer Silva asked Mr. Trevino for his driver's license. Mr. Trevino replied that he did not have a driver's license. Officer Silva arrested Mr. Trevino for driving without a license. After placing Mr. Trevino under arrest, Officers Silva and Raster conducted a search of the vehicle. During their search the officers observed a glass pipe under the center console, a cigarette carton containing methamphetamine, and a five-pound white bucket containing narcotics located in the back hatch of the vehicle.

Mr. Trevino is charged in this case with violating 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) (possession with intent to distribute methamphetamine). He moves to suppress all evidence obtained as a result of what he alleges was an illegal seizure and search. *ECF No*. 28. He argues that he was stopped without reasonable suspicion, and that the warrantless search of his vehicle was done in violation of his rights secured by the Fourth Amendment. *Id*. at 3-4. Mr. Trevino also requests to present oral argument on the merits of his motion to suppress.

The Court heard the arguments from Mr. Trevino and the Government on February 25, 2022. The Government presented the testimony of San Antonio Police Department (SAPD) Detective Jason Reno and Officer Juan Silva and introduced evidence that included Officer Silva's body camera video and COBAN video from the night of Mr. Trevino's arrest. *ECF No*. 59.

At the close of the hearing, the Court permitted supplemental briefing to be filed by dates certain. With briefing complete, the motion is ripe for ruling.

**BURDEN OF PROOF**

The Fourth Amendment protects against unlawful searches and seizures by the Government, and "its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Because officers searched Mr. Trevino's vehicle without a warrant, the Government bears the burden of proving by a preponderance of the evidence that the search complied with the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

**DISCUSSION**

**A.  Reasonable suspicion to conduct the traffic stop**

The stopping of an automobile and subsequent detention of its occupants, even for a short period of time, is a seizure subject to Fourth Amendment protections. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Whether a stop violates the Fourth Amendment depends upon its "reasonableness." *Ohio v. Robinette,* 519 U.S. 33, 40 (1996). In determining whether a stop was reasonable, courts analyze "whether the officer's action was justified at its inception." *Terry,* 392 U.S. at 19-20. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *see also Arvizu*, 534 U.S. at 273 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level

of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Sokolow*, 490 U.S. at 7).

As previously stated, witnessing a traffic violation is an objectively reasonable basis on which to conduct a traffic stop. *Lopez-Moreno,* 420 F.3d at 430. Here, both Detective Reno and Officer Silva testified that Mr. Trevino was stopped because they and several other officers witnessed Mr. Trevino change lanes without signaling. *ECF No.* 59 at 14, 72. Mr. Trevino argues that the video evidence admitted in this case contradicts the testimony of Detective Reno and Officer Silva that they witnessed Mr. Trevino commit the traffic violation. *ECF No.* 60 at 1. However, testimony clarified the COBAN cameras attached to marked patrol cars do not turn on until the emergency lights are activated, and because the emergency lights were activated after the occurrence of the traffic violation, it follows that the violation itself would not have been recorded on the COBAN camera. *ECF No.* 59 at 75. Additionally, video evidence of the traffic violation is not required in order to rule a traffic stop valid. Accordingly, based on the SAPD officers' testimony, they witnessed conduct by Mr. Trevino sufficient to establish reasonable suspicion.

Furthermore, reasonable suspicion can be formed by a confidential informant's tip so long as the information is marked by "indicia of reliability." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). There are a number of factors that courts look to in determining whether a tip provides reasonable suspicion. These factors include "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity." *Id.* at 369-70.

In this case, Detective Reno testified that the informant who provided the tip was a known informant that Detective Valdez has had for years and who has provided reliable information in the past. *ECF No.* 59 at 16. Additionally, the information provided by the informant in this case was specific and detailed, including the make, model, and color of the car, where Mr. Trevino was headed, and what route he would be taking to get to his destination. *Id.* at 7-8, 11. Further, Detective Reno confirmed the information given by the informant by discovering a vehicle with same the license plate traveling in real time on I-10. *Id.* at 7-9. As to whether the tip had gone stale, Detective Reno testified Detective Valdez received the tip that very same day, and the information given was regarding activity that was actively taking place. *Id.* at 6. Based upon the evidence, the Court finds the informant in this case was reliable, and the information provided was specific, sufficiently corroborated, and concerned recent activity. Accordingly, the tip provided by the informant was enough to create reasonable suspicion to conduct the stop of Mr. Trevino's vehicle.

Additionally, knowledge of active warrants for a defendant is on its own enough to create reasonable suspicion to conduct a traffic stop. *See United States v. Montalvo-Rangel*, No. SA-10-CR-64-XR, 2010 WL 1417745 (W.D. Tex. Apr. 5, 2010) (*Citing United States v. McBrown*, 149 F.3d 1176 (5th Cir. 1998)). Since "[w]arrant information used by law enforcement officers is sufficiently reliable to meet the even higher probable cause standard," knowledge of active warrants necessarily meets the less demanding reasonable suspicion standard. *McBrown*, 149 F.3d at 10. In this case, Detective Reno previously worked a case involving Mr. Trevino and was aware of two active felony arrest warrants for Mr. Trevino. *ECF No.* 59 at 6-7. He shared this information with the rest of his team, including Officer Silva who made the resulting traffic stop.

*Id.* at 69. Because Officer Silva had knowledge of the active felony warrants for Mr. Trevino at the time of the traffic stop, that alone created reasonable suspicion to conduct the stop.

Having carefully considered the witnesses' testimony and exhibits, the Court finds that there was reasonable suspicion to stop Mr. Trevino on three independent bases.

**B.  Probable cause to search the vehicle**

Under the Fourth Amendment, warrantless searches are unreasonable per se unless they fall under one of the "specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The exceptions discussed by the parties in their supplemental briefing include the Consent exception, the Plain View exception, the Inventory exception, the Exigent Circumstances exception, and the Automobile exception. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010); *S. Dakota v. Opperman*, 428 U.S. 364, 370 (1976); *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009); *United States v. Ross*, 456 U.S. 798 (1982). The Court will discuss each exception in turn.

It is well settled that searches conducted pursuant to consent are valid as an exception to the Fourth Amendment's warrant requirement. In this case, consent to search the vehicle was not given by Mr. Trevino. *ECF No.* 59 at 95-96. Therefore, the Consent exception does not apply here.

The Plain View exception "allows police to seize items where (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *Rodriguez*, 601 F.3d at 407 (citing *Horton v. California,* 496 U.S. 128, 136-37 (1990). Here, the evidence indicates the glass pipe, the cigarette carton containing narcotics, and the

bucket containing narcotics were not seen until after the search of the vehicle was initiated, illustrating that the items were not in plain view as within the regular meaning of that phrase before the search was conducted. *ECF No.* 59 at 79-82. Accordingly, the Plain View exception is not a valid exception to the warrant requirement in this case.

The Inventory Search exception allows officers to search impounded vehicles to take an inventory of the car to protect the owner's property and to protect the police from any dangerous content inside of the vehicle. *Opperman,* 428 U.S. at 370. In his testimony, Officer Silva states the reason he searched the car was because the vehicle was going to be towed and he wanted to make sure there was nothing of value or any weapons in the vehicle, which indicates he was conducting an Inventory Search. *ECF No.* 59 at 79. Mr. Trevino argues the Government failed to prove the inventory search was conducted through a standardized regulation or procedure and therefore this exception is invalid in this case because it was not a proper inventory search. However, while Officer Silva does not describe in detail the standard procedures to be followed that have been established by SAPD for conducting inventory searches, his 23 years of experience working for SAPD combined with the language used in his testimony implies that taking inventory of vehicles set to be impounded in this manner is common practice for SAPD. *Id.* at 66, 79. Therefore, the Court concludes the Inventory Search conducted in this case is valid under the Inventory Exception to the Fourth Amendment's warrant requirement.

The Exigent Circumstances exception allows for warrantless searches when exigent circumstances are present that outweigh the need to obtain a warrant from a neutral magistrate before conducting the search. *See Menchaca-Castruita*, 587 F.3d at 289. There are several factors to consider when determining if exigent circumstances exist including,

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the

> possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

*United States v. Mata,* 517 F.3d 279, 287 (5th Cir. 2008). Based on the evidence presented, there was no urgency to conduct the search, there was no possibility of danger to the officers on the scene nor a belief that contraband was going to be removed or destroyed, and as Mr. Trevino was already under arrest at the time of the search, there was no threat of him escaping. Accordingly, there were no exigent circumstances present at the time of the search and this exception to the Fourth Amendment's warrant requirement is not relevant in this case.

Lastly, the Automobile exception to the Fourth Amendment's warrant requirement provides law enforcement officers may search a vehicle when they have "probable cause to believe that the vehicle contains contraband." *Ross*, 456 U.S. at 798. Under this exception "a search is not unreasonable if based on objective facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Id*. In this case, Detective Reno testified he received a tip that contraband would be found in Mr. Trevino's vehicle. *ECF No*. 59 at 7. To determine whether an informant's tip is sufficient to establish probable cause, courts examine the totality of the circumstances. *Powell,* 732 F.3d at 372 (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)). When making that determination, courts take into account several factors to evaluate information provided by an informant including the "reliability, corroboration, specificity, and recency" of the information provided. *Id*. For the same reasons stated previously that the informant's tip created reasonable suspicion to conduct the traffic stop, the Court finds that the information was reliable, specific, sufficiently, corroborated, and had recency. The tip, which implied that narcotics would be found in the vehicle, combined with the officer's knowledge of Mr. Trevino's

active felony drug arrest warrant, established probable cause that the vehicle contained contraband.

Therefore, the Court finds that under the Inventory Search Exception and the Automobile Exception officers had probable cause to search the vehicle, and the warrantless search of Mr. Trevino's vehicle did not violate his Fourth Amendment rights.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Suppress Evidence (*ECF No.* 28) is DENIED. Based on the representations made in the briefings, Defendant's request for oral argument on the motion is DENIED.

It is so ORDERED.
SIGNED this 5th day of July, 2022.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE